**William N. SPEARING and Trudy Spearing, Plaintiffs-Appellants,**

v.

**NATIONAL IRON COMPANY, Pettibone Corporation, and Pettibone International Sales Corporation, Defendants-Appellees.**

No. 84–1464.

United States Court of Appeals, Seventh Circuit.

Argued April 24, 1985.

Decided July 30, 1985.

William A. Schroeder, Sommer, Olk & Schroeder, Rhinelander, Wis., for plaintiffs-appellants.

Thomas A. Lockyear, Bell, Metzner & Gierhart, S.C., Madison, Wis., for defendants-appellees.

Before ESCHBACH and POSNER, Circuit Judges, and TIMBERS, Senior Circuit Judge.*

POSNER, Circuit Judge.

This appeal by the plaintiffs in a products liability suit brought in federal court under the diversity jurisdiction raises questions of Canadian law and of Wisconsin tort and conflicts law. Mr. Spearing, a citizen of Canada, was employed by a Canadian company that is not a party to this suit to transport a truck-crane from Duluth, Minnesota to New York. The tractor and carrier of the truck-crane had been made in Canada by the Canadian subsidiary of Pettibone Corporation, a Delaware corporation having its principal place of business in Illinois, and had been sold to National Iron Company, a division of Pettibone Corporation. National Iron Company had built the crane part of the assemblage and assembled the various components to make the completed truck-crane. It had done all this in Duluth. While Spearing was driving the truck-crane in Wisconsin en route from Duluth to New York, the front axle broke. The truck-crane veered off the road and Spearing was seriously hurt. So, to recapitulate, a Canadian citizen while working for a Canadian employer was injured in Wisconsin because of a defective component made by the Canadian subsidiary of the American (though not Wisconsin) corporation that had assembled the rig he was driving.

After receiving workmen's compensation in Canada, Spearing (joined by his wife) brought this suit against Pettibone Corporation in a federal district court in Wisconsin. The complaint also names as defendants a domestic affiliate of Pettibone Corporation, Pettibone International Sales Corporation, which seems however to have dropped out of the case at some point and

* Hon. William H. Timbers of the Second Circuit, sitting by designation.

requires no further mention, and National Iron Company, which being an unincorporated division of Pettibone Corporation is not suable in its own right. The jury returned a special verdict in which it found that both National Iron Company—which is to say Pettibone Corporation—and Pettibone Canada had been at fault, that Spearing had also been at fault, and that the Spearings had sustained more than $400,000 in damages. Asked in the special verdict to apportion fault among all those who might have played a causal role in the accident, the jury apportioned 12 percent of the fault to National Iron Company, 25 percent to Pettibone Canada, 35 percent to Spearing, and the rest to various other entities, none of them defendants, such as the State of Wisconsin for unsafe highway design; but to none of these did it attribute more than 12 percent of the fault.

In the ruling that is the focus of this appeal, the judge refused to treat the Pettibone affiliates as a single injurer, bearing 37 percent of the responsibility for the accident (National Iron's 12 percent plus Pettibone Canada's 25 percent), for purposes of applying Wisconsin's comparative negligence law. The consequence was to make Spearing, the victim of the accident, more negligent than any injurer (considering National Iron and Pettibone Canada as separate injurers). Therefore, under that law as it has been authoritatively interpreted by the Wisconsin courts, Spearing could recover no damages. See Wis. Stat. § 895.045 ("Contributory negligence shall not bar recovery ... if such negligence was not greater than the negligence of the person against whom recovery is sought"); *Wisconsin Natural Gas Co. v. Ford, Bacon & Davis Construction Corp.*, 96 Wis.2d 314, 326–30, 291 N.W.2d 825, 831–33 (1980). Nor could Spearing's wife, as coplaintiff; her rights are derivative from his own. The Spearings' argument that comparative negligence does not apply in products liability cases because liability is strict and proof of negligence therefore irrelevant is frivolous in light of cases such as *Dippel v. Sciano*, 37 Wis.2d 443, 460–63, 155 N.W.2d 55, 64–65 (1967); *City of*

*Franklin v. Badger Ford Truck Sales, Inc.*, 58 Wis.2d 641, 653–55, 207 N.W.2d 866, 871–72 (1973); *Austin v. Ford Motor Co.*, 86 Wis.2d 628, 643, 273 N.W.2d 233, 239 (1979), and *Collins v. Eli Lilly Co.*, 116 Wis.2d 166, 200 n. 14, 342 N.W.2d 37, 53 n. 14 (1984).

The district judge based her refusal to add Pettibone Canada's negligence to National Iron's on a provision of the Ontario workmen's compensation law that forbids an employee of an employer covered by the law to seek tort damages from any covered employer for an accident occurring in the course of his employment; the fact that the employer named as defendant in the tort suit was not the accident victim's employer is immaterial. See Workmen's Compensation Act, R.S.O.1980, ch. 539, § 8(11). As an original matter there would be some doubt whether the Spearings would win their appeal just by getting us to overturn the judge's application of Ontario law. They would still face the problem under Wisconsin law of piercing the corporate veil in which Pettibone Canada is swathed and adding its negligence to that of National Iron. Whether this can be done to mitigate the rigors of Wisconsin's comparative negligence law is an open question, see *Flaminio v. Honda Motor Co.*, 733 F.2d 463, 466 (7th Cir.1984), and if we thought it inescapably presented we would be inclined to certify it to the Wisconsin Supreme Court rather than attempt to answer it with no guidance in the Wisconsin statute or case law. But the defendants have not argued the point and we shall treat it as waived.

The Ontario workmen's compensation law would have prevented Spearing from bringing a tort suit in Ontario against Pettibone Canada, because Pettibone Canada is covered by the law. The district judge held that under Wisconsin's conflict of law principles, this provision of the Ontario workmen's compensation law is applicable to this case and required her to hold Pettibone Canada's negligence separate from that of its affiliate, Pettibone Corporation (National Iron). We agree that the law is

applicable but not that it has the effect that the district judge thought it had.

 To understand why the Ontario law is applicable, imagine that the Spearings were suing just Pettibone Canada. (That by the way would have to be a suit in a Wisconsin state court, rather than a federal district court; whatever doubts there might be on this score as an original matter, the cases make clear that there would be no basis for federal jurisdiction if there were Canadians on both sides of the case. See, e.g., *IIT v. Vencap, Ltd.*, 519 F.2d 1001, 1015 (2d Cir.1975) (Friendly, J.); *Ed & Fred, Inc. v. Puritan Marine Ins. Underwriters Corp.*, 506 F.2d 757, 758 (5th Cir.1975).) That hypothetical suit would be a suit by a Canadian employee against a Canadian employer covered by a Canadian workmen's compensation law, and it would be hard to see why a Wisconsin court would refuse to apply that law to the suit, though with what consequences we have yet to consider. Wisconsin's conflict of law principles require a Wisconsin court, and hence this court in a diversity suit, *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941), to defer to the interests of a state or other jurisdiction (here it is a Canadian province) that has a substantial concern with the litigation, at least when Wisconsin's concern is minimal. See, e.g., *Hunker v. Royal Indemnity Co.*, 57 Wis.2d 588, 601, 204 N.W.2d 897, 903–04 (1973). And that would be a good description of our hypothetical case. Since Spearing received workmen's compensation in Canada, why would Wisconsin in the hypothetical case we have put think it important to allow him to recover additional damages from another Canadian company, in the teeth of a Canadian law barring such a damage suit, merely because the accident occurred on a highway in Wisconsin? Canada would have much the greater interest in the suit than Wisconsin.

But the actual suit is different. It is not against a Canadian employer. Pettibone Canada is not a party. The question is whether its affiliation with Pettibone Corporation, which is a party, should by virtue of the Ontario workmen's compensation law shield Pettibone Corporation from liability under Wisconsin tort law, even though Pettibone Corporation is not covered by the Ontario law. It is not Pettibone Corporation that is entitled to a shield based on Canadian law; it is only Pettibone Canada, and its interests can be fully safeguarded without cutting off all the rights that the Spearings would otherwise have under Wisconsin law.

 To make sure that the Spearings are not permitted to impose liability on Pettibone Canada indirectly, simply by omitting it as a defendant as they did, the district judge was justified in putting to the jury the question to what extent the accident was that company's fault. Such a procedure is very much in the spirit of the Ontario statute, which provides that "in any action brought by an employee of a [covered] employer, ... and one or more of the persons found to be at fault or negligent is [a covered] employer ..., no damages, contribution or indemnity are recoverable for the portion of the loss or damage caused by the fault or negligence of" such employer, "and the portion of the loss or damage so caused by the fault or negligence of such employer ... shall be determined although such employer ... is not a party to the action." R.S.O.1980, ch. 539, § 8(11). And independently of the Ontario statute the logic of the Wisconsin comparative negligence law requires that the proportional fault of all tortfeasors be determined, whether or not they are named as defendants. This is a necessary step in fixing the proportional fault of the plaintiff and of the named defendant(s). "It is established without doubt that, when apportioning negligence, a jury must have the opportunity to consider the negligence of all parties to the transaction, whether or not they be parties to the lawsuit...." *Connar v. West Shore Equipment of Milwaukee, Inc.*, 68 Wis.2d 42, 44–45, 227 N.W.2d 660, 662 (1975); see also *Johnson v. Misericordia Community Hospital*, 99 Wis.2d 708, 710–11, 301 N.W.2d 156, 158

(1981). The jury was asked to do this here with regard to other nondefendant tortfeasors, such as the State of Wisconsin, as well as Pettibone Canada.

■ In its special verdict the jury assessed Pettibone Canada's fault at 25 percent. The logical next step would have been for the judge to knock 25 percent off the verdict (in addition to the 35 percent that had to be knocked off because of Mr. Spearing's own negligence; and perhaps other adjustments would also be necessary, as discussed at the end of this opinion). We think it apparent that the Ontario law applies to this case to that extent, and with that force. For as regards the rights of the Spearings, who are Canadian citizens, against Pettibone Canada, a Canadian corporation, Wisconsin's interest is minimal; and yet to make the corporation's American parent pay for the part of the Spearings' damages that is attributable to the Canadian corporation's fault would be in effect to make the Canadian corporation pay. It does not matter who owns the corporation. The ultimate incidence of the judgment will be the same (ignoring complications caused by limited liability) whether a Canadian corporation owned by Americans is forced to pay a judgment or the shareholders are assessed directly. Wisconsin has little interest in assuring tort compensation for Canadian citizens injured by a Canadian company and the district judge would therefore have been right to exclude from the judgment the liability attributable to Pettibone Canada.

But she went further and used the Ontario law to preclude any award of damages against Pettibone Corporation. Whether this was right depends on whether the Ontario workmen's compensation law should be interpreted to bar a suit in the United States against a United States affiliate of a covered Canadian employer. If the answer is "no," there is no conflict between Canadian and Wisconsin law; even applied to the hilt the Canadian law will impede no Wisconsin policy of tort recovery. "In a conflict of law situation, the first step is to determine whether there is a conflict, that is, will the choice of one law as compared to another determine the outcome." *Lichter v. Fritsch,* 77 Wis.2d 178, 182, 252 N.W.2d 360, 362 (1977). Although Wisconsin's interest would still be rather weak since no party is a Wisconsinite, it seems to be conceded all around that a Wisconsin court would apply Wisconsin tort law unless Ontario's workmen's compensation law were inconsistent.

Neither the language of the Canadian law nor any Canadian decision reads directly on the question; yet the answer should be clear from what we have already said. The Canadian interest in this case is exhausted once the district court carves out of the damage judgment the part attributable to the Canadian employer's fault. If more is necessary to nail down the point, consider the following variants of the present case. Suppose first that no defendants were affiliates of Pettibone Canada but that nevertheless the Spearings had an argument (we need not consider what the argument might be) that Pettibone Canada's fault could be combined with that of some defendant for purposes of determining liability under Wisconsin's comparative negligence law. No one we take it would argue that this combination would run afoul of the Ontario workmen's compensation law, so long as Pettibone Canada were immune from liability. There would be no basis for stretching that law to reach a situation in which applying it could not advance the policy of the law a millimeter, as it could not, since the only effect of the combination would be to make a defendant having no connection with Canada pay damages to the plaintiffs. The Ontario law would protect Pettibone Canada from a third-party suit for contribution or indemnity, brought by losing defendants in the Spearings' case; but the Spearings would get damages.

Next suppose that instead of Pettibone Canada being the maker of the defective axle, Pettibone Florida, an imaginary division of the Pettibone Corporation, had been the maker; and to preserve the symmetry suppose further that Pettibone Florida

were not named as a defendant—just Pettibone Corporation. Then, leaving aside as waived any question of the propriety of piercing the corporate veil in this setting, Pettibone Corporation would have been adjudged 37 percent at fault (12 percent for National Iron, 25 percent for Pettibone Florida), and would therefore be liable. Again there would be no argument for applying the Ontario workmen's compensation law to bar the Spearings from getting tort damages under Wisconsin law. It would be irrelevant that the Spearings were Canadian and that Pettibone was affiliated with a covered Canadian employer.

■ If, as in the actual case, the affiliated joint tortfeasor is Canadian, that still is no reason to allow the United States affiliate to get off scot-free. Ontario has no reason to want to shield American companies from damage suits by Ontarians. It only wants to protect the Ontario employer. The theory of the employer's immunity from common law liability is that he has paid into the workmen's compensation fund and ought not have to pay as it were twice by being exposed to tort liability for industrial accidents. See Report of the Ontario Royal Comm'n in the Matter of the Workmen's Compensation Act 183 (1967). The theory has no application to a firm such as Pettibone Corporation that is not subject to the Ontario workmen's compensation law. The affiliated Ontario employer, Pettibone Canada, can be fully protected by the district court's subtracting from the judgment the share of the damages that is attributable to the employer's fault.

Of course there is a sense in which exonerating the United States affiliate would help the Canadian affiliate. They are one company; what helps one component helps all. But remember that the other side of the suit is Canadian too; the Spearings are Canadian. We cannot see how Canada is made better off by a rule that uses a Canadian compensation law to prevent Canadians from recovering any damages from an American company, merely because that company happens to have a Canadian affiliate. This is especially hard to see when

one realizes that the Ontario Workmen's Compensation Board has been subrogated to Mr. Spearing's damage right to the extent of the workmen's compensation that it has paid him, so that the ruling of the district judge has defeated the rights not only of a Canadian worker and his Canadian wife but of a Canadian government agency as well.

■ Our conclusion is reinforced by the fact that in doubtful conflict of law situations Wisconsin prefers to give effect to its own policy of allowing the victim of an injury to recover common law tort damages from the person or persons responsible for the injury, or their insurer. See, e.g., *Haines v. Mid-Century Ins. Co.*, 47 Wis.2d 442, 451, 177 N.W.2d 328, 333 (1970). If to do so causes no conflict with the law of any other jurisdiction, the choice should be an easy one. See *Air Products & Chemicals, Inc. v. Fairbanks, Morse, Inc.*, 58 Wis.2d 193, 203–04, 206 N.W.2d 414, 419 (1973). There is no conflict between Wisconsin tort policies and Canadian compensation policies beyond what would be created by allowing the Spearings to recover damages attributable to the conduct of Pettibone Corporation's Canadian subsidiary.

■ The judgment for the defendants must therefore be reversed and the case remanded for further proceedings consistent with this opinion. On remand the district judge will have to consider what percentage of the damages award the Spearings are entitled to. Since tort liability in Wisconsin remains joint and several notwithstanding the comparative negligence law, *Fitzgerald v. Badger State Mutual Casualty Co.*, 67 Wis.2d 321, 331–32, 227 N.W.2d 444, 449 (1975), it might seem obvious that the Spearings are entitled to 40 percent (100 percent minus the 25 percent representing the contributory fault of Pettibone Canada and 35 percent representing Mr. Spearing's own contributory fault). But it is not obvious. *Chille v. Howell*, 34 Wis.2d 491, 499, 149 N.W.2d 600, 604–05 (1967), and *Walker v. Kroger Grocery & Baking Co.*, 214 Wis. 519, 536, 252 N.W. 721, 727–28 (1934), state that any tort-

feasor whose fault is no greater than the plaintiff's is "out of the picture" so far as that tortfeasor's liability to the plaintiff is concerned. Maybe he is also out of the picture so far as any other defendant's liability is concerned. Since Mr. Spearing was more at fault than any tortfeasor except Pettibone Corporation (when Pettibone Canada's negligence is added to its own), perhaps his and his wife's damages are limited to 12 percent of the award, the fault attributable to Pettibone Corporation. But that is an issue to be sorted out on remand; we hold only that the policy of the Ontario statute is fully vindicated by reducing the damage award by the fraction of fault attributable to the Ontario affiliate.

REVERSED AND REMANDED.