UNITED STATES of America, Appellee,

v.

**ITT BLACKBURN CO., A DIVISION OF ITT, Appellant.**

No. 86–2388.

United States Court of Appeals, Eighth Circuit.

Submitted June 9, 1987.

Decided July 20, 1987.

Rehearing Denied Sept. 21, 1987.

---

Edwin A. Kilburn, New York City, Kevin F. O'Malley, St. Louis, Mo., for appellant.

Timothy J. Wilson, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before ARNOLD and MAGILL, Circuit Judges; and DUMBAULD,[*] Senior District Judge.

MAGILL, Circuit Judge.

This case, which arises out of shipments of materials to Iran in violation of President Carter's 1980 trade embargo, raises questions concerning the intended target of a grand jury indictment. Specifically, we must decide whether ITT Corporation (ITT) was properly made a defendant pursuant to an indictment naming ITT Blackburn Company (Blackburn), an unincorporated division of ITT. We conclude that ITT was improperly brought into court under the terms of the indictment, and accordingly we reverse the judgment of the district court.

## I. FACTS.

Appellant ITT[1] is a multinational corporation incorporated in Delaware with its principal offices in New York. During 1979 to 1982, it had an unincorporated division, Blackburn, which was located in Overland, Missouri and manufactured electrical line hardware.

In the late 1970's, the Shah of Iran, through his public utility entities, began large purchases of electrical line hardware in an effort to electrify a large number of villages. In 1979, Blackburn was awarded over $2,000,000 worth of contracts by these Iranian public utility entities for the sale and shipment of electrical line hardware to Iran.

On November 4, 1979, Iranian nationals invaded the United States Embassy in Teheran, Iran. In the civil strife, fifty-three American citizens were taken hostage. On April 7, 1980, in response to the hostage seizure, President Carter issued Executive Order # 12205, which imposed a trade embargo on Iran. On April 9, 1980, the United States Department of the Treasury issued regulations to implement the embargo. The Executive Order and the Treasury regulations remained in effect until the release of the hostages on January 19, 1981.

Individuals with a financial stake in the Blackburn contracts with Iran became concerned that they would lose potential profits as a result of the embargo. Starting in April or May of 1980, a series of meetings took place involving Blackburn executives, foreign selling agents, and others, with the result that on November 20, 1980, Blackburn began shipments of electrical goods out of St. Louis, through Finland, and to Iran. From November 20, 1980 through June 5, 1982, Blackburn sent fourteen shipments of electrical goods valued at $2,600,000 from St. Louis through Finland and the Soviet Union to Iran. Four of the fourteen shipments occurred within the presidential trade embargo, taking place on November 20, 1980; December 19, 1980; December 31, 1980; and January 9, 1981.

The illegal shipments came to light when Bengt Beckmann, a Swedish national working abroad on a commission contract with Blackburn, demanded $2,000,000 from ITT to destroy documents relating to one of the transactions. ITT rejected the demand, began an investigation, and informed the government of what it learned.

## II. PROCEDURAL HISTORY.

In the summer of 1985, the U.S. Attorney's office in St. Louis advised ITT that it was the target of a grand jury investigation, and on December 5, 1985, the grand jury returned an indictment pertaining to one of the illegal transactions. The indictment, however, named "I.T.T. Blackburn Co., Inc." and did not name ITT. The indicted organization was further described as "a Missouri corporation and subsidiary of International Telephone and Telegraph

---

[*] HON. EDWARD DUMBAULD, United States Senior District Judge for the Western District of Pennsylvania, sitting by designation.

1. ITT's name was changed from "International Telephone & Telegraph Corporation" to ITT Corporation effective December 31, 1983.

Company located at 1525 Woodson Road, Overland, Missouri, engaged in the manufacture and sale of electrical line hardware." Two Blackburn officers were also indicted.

Because the indictment did not on its face name ITT as a defendant, ITT filed a motion on January 3, 1986, suggesting that it lacked standing to defend the case and noting that the business entity named in the indictment did not then, nor had ever, existed.

On January 17, 1986, the prosecutor sought leave of court to amend the indictment. The proposed amendment again did not name ITT. Rather, the prosecutor sought to have the indictment name "ITT Blackburn Company, a Division of International Telephone and Telegraph Corporation." The district court referred the government's motion to amend to Magistrate David D. Noce. On February 5, 1986, Magistrate Noce denied the motion.

After Magistrate Noce's decision, the prosecutor obtained a second indictment from the grand jury on February 12, 1986. This indictment, upon which the case was eventually tried, named "ITT Blackburn Company, a Division of International Telephone and Telegraph Corporation." The same two Blackburn officers were again indicted. ITT filed a motion to dismiss the second indictment because once again it was not charged as a defendant. On May 1, 1986, Magistrate Noce found that the second indictment "does not name ITT Corporation as a defendant," yet declined to grant ITT's motion to dismiss because in his view the corporate defendant's identity was a fact issue to be resolved by the jury at trial. ITT unsuccessfully appealed the Magistrate's recommendations to the district court, which held that ITT had been charged by both the December 1985 and February 1986 indictments.

The case went to trial on the second indictment. At the outset of trial, counsel for ITT reasserted that ITT had not been indicted. This argument was rejected. After a nine-day trial, the jury was given a verdict form that called for it to determine whether Blackburn, rather than ITT, was guilty. The jury returned a verdict of guilty against Blackburn on all counts, and the district court sentenced Blackburn to pay fines totalling $78,000.

## III. DISCUSSION.

ITT urges a number of issues on appeal, but because we find it dispositive, we need only reach the indictment issue. ITT argues that it was improperly forced to defend at a trial conducted on an indictment naming Blackburn rather than ITT. ITT argues that the grand jury did not intend to indict ITT and thus, by bringing ITT to trial despite the grand jury's wishes, the prosecution sidestepped the basic constitutional protections that the grand jury was designed to provide.[2] ITT argues further that it was substantially prejudiced as a result of its posture in these proceedings.

The government responds that the inclusion of both a division and a corporation in an indictment is sufficient to indict the corporation. The government argues that because a corporate division is not a separate legal entity and cannot be indicted in its own right, an indictment which named both ITT and one of its divisions was adequate to indict ITT. The government further argues that the grand jury clearly intended to indict ITT.

We must therefore decide whether ITT was ever indicted, for if not, ITT was improperly brought to trial. This requires a threshold examination of the grand jury proceedings.

The purpose of the grand jury is to remove from prosecutors the power to initiate prosecutions for felonies and instead to place that power with a group of citizens "acting independently of either prosecuting attorney or judge." *Russell v. United States*, 369 U.S. 749, 771, 82 S.Ct. 1038, 1051, 8 L.Ed.2d 240 (1962), quoting *Stirone v. United States*, 361 U.S. 212, 218, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960). Part of this constitutional function is to protect

---

**2.** "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const., amend. V.

against "hasty, malicious and oppressive persecution." *Wood v. Georgia,* 370 U.S. 375, 390, 82 S.Ct. 1364, 1373, 8 L.Ed.2d 569 (1962). *See also United States v. Calandra,* 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974). Accordingly, "a court cannot permit a defendant to be tried on charges that are not made in the indictment against him." *Stirone v. United States,* 361 U.S. at 217, 80 S.Ct. at 273; *accord, United States v. Yeo,* 739 F.2d 385, 387 (8th Cir.1984). *See Chow Bing Kew v. United States,* 248 F.2d 466, 468 (9th Cir.) (dismissing count of indictment which failed to identify anyone as committing violation), *cert. denied,* 355 U.S. 889, 78 S.Ct. 259, 2 L.Ed.2d 188 (1957). As the Supreme Court stated in *Russell,* 369 U.S. at 770, 82 S.Ct. at 1050:

> To allow the prosecutor * * * to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure.

The evidence raises serious questions as to whether the grand jury, in deciding to issue the indictment, intended to indict ITT. In this regard the following colloquy, which took place before the grand jury returned the first indictment, is instructive. At one point a grand juror specifically asked the prosecutor why ITT was not named as a defendant, and the prosecutor told him that the grand jury was only indicting Blackburn.

> GRAND JUROR: Are we not indicting the parent corporation [ITT] for lack of evidence, or why aren't we bringing them into it?

> MR. WILSON: Well, you aren't—the proposed indictment indicts I.T.T. Blackburn, a subsidiary of International Telephone and Telegraph Company because, you know, this is a subsidiary here that manufactured the goods and the people

have set the thing in motion to send the goods overseas and to falsify the documents.[3]

This exchange is persuasive in leading this court to conclude that the grand jury intended to indict Blackburn and not ITT, and that the prosecutor was of the same mind. Furthermore, two months later, when the prosecution was obtaining its second, amended indictment, the prosecutor appeared before the same grand jury and told a customs agent that "your purpose here today is one, to list for the Grand Jury the exact working of the one defendant which we've indicted before, but we want to make the title exact regarding I.T.T. Blackburn Company * * *."

Turning to examine only the face of the indictments, ITT was clearly not indicted. Whenever ITT was mentioned in either the first or amended indictment, it was purely as a means of identifying Blackburn. In their briefs, both parties appear to concede that an unincorporated division cannot be sued or indicted, as it is not a legal entity. We accept this as valid. *See United States v. Computer Sciences Corp.,* 689 F.2d 1181, 1190 (4th Cir.1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983) ("The RICO 'enterprise' was identified in the indictment as the Infonet Division of CSC, an organization which had no corporate existence separate and apart from that of CSC itself"); *Spearing v. National Iron Co.,* 770 F.2d 87, 88–89 (7th Cir.1985) ("The complaint also names as defendants * * * National Iron Company, which being an unincorporated division of Pettibone Corporation is not suable in its own right").

The government argues, however, that naming Blackburn in the indictment was sufficient to indict ITT. The government cites a number of cases supporting this proposition. In *Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 770, 104 S.Ct. 2731, 2741, 81 L.Ed.2d 628 (1984),

---

**3.** The government argues that to take this particular exchange out of the context of the entire grand jury proceedings is unfair, because there was substantial other testimony which revealed that the grand jury knew it was indicting ITT. At oral argument, this court invited the government to submit the pertinent transcript sections. The government did so, yet a careful reading of the sections the government cites reveals nothing to support its contention, and certainly nothing which would refute the impact of the interchange we have set out.

the Supreme Court stated that "there can be little doubt that the operations of a corporate enterprise organized into divisions must be judged as the conduct of a single actor."

In *Copperweld*, however, the Court made the quoted statement in the course of deciding that a corporation and its wholly owned subsidiary were incapable of conspiring with each other under section 1 of the Sherman Act, because "officers or employees of the same firm do not provide the plurality of actors imperative for a § 1 conspiracy." *Copperweld*, 467 U.S. at 769, 104 S.Ct. at 2741. The thrust of the statement is clearer in view of the following sentence in the opinion: "Because coordination between a corporation and its division does not represent a sudden joining of two independent sources of economic power previously pursuing separate interests, it is not an activity that warrants § 1 scrutiny." *Id.* at 770–71, 104 S.Ct. at 2741. We do not believe that the government's proffered statement in *Copperweld* can be stretched to meet the framework of this case.

The government also cites *In re Sugar Industry Antitrust Litigation*, 579 F.2d 13, 18 (3d Cir.1978), in which the Third Circuit stated that a "division of a corporation is not a separate entity but is the corporation itself." *Accord, Western Beef, Inc. v. Compton Investment Co.*, 611 F.2d 587, 591 (5th Cir.1980). Finally, in *Spearing v. National Iron Co.*, 770 F.2d 87, 89 (7th Cir.1985), the court stated that the jury "found that * * * National Iron Company [the unincorporated division]—which is to say Pettibone Corporation [the corporation] * * * had been at fault."

These cases are not dispositive, however. First, in all three cases, it appears that the corporation itself was made a party to the suit. Second, *In re Sugar Industry* and *Western Beef* both stated the proposition advanced by the government in ruling that a guilty corporation could not shield itself from liability by channeling its activity through a division. None of the government's cases focus on the sufficiency of an indictment, which is the issue here. In sum, the government's cases more accurately state the proposition that when a corporation is properly made a party to litigation, then any unincorporated divisions may also be liable. The cases do not say that indicting an unincorporated division serves to indict the corporation as well.

*United States v. Sherpix, Inc.*, 512 F.2d 1361 (D.C.Cir.1975), is more pertinent to this issue. The *Sherpix* court reversed a conspiracy conviction and ruled that an indictment that merely listed Sherpix, Inc. as the instrumentality through which the individual defendants conspired to violate the law was not sufficient to indict Sherpix, Inc. for conspiracy. The court noted: "the Government argued that * * * a corporation is criminally responsible for the acts of its officers and thus can be charged with their conspiracies. Since the corporation's president, Sher, was included in the list of conspirators, the Government asserted that this was sufficient to hold the corporation liable." *Sherpix*, 512 F.2d at 1367. The court's response, however, was that "[t]he Government's argument is correct, so far as it goes, *but a necessary prerequisite to conviction of the corporation is that it be designated as a defendant and charged as a conspirator by appropriate factual allegations.*" *Id.* at 1367 n. 7 (emphasis added). The court concluded:

It is fundamental that the indictment must inform an accused of the nature of the charges against him, *and it is a necessary corollary that the indictment must also give the accused notice that he is in fact being accused.* * * * That the grand jury did not intend to charge Sherpix, Inc. in Count I is self-evident from the failure to name Sherpix as a party defendant * * *.

*Id.* at 1367–68 (emphasis added).

As in *Sherpix*, here ITT was not accused. The individual defendants here were not alleged to be employees of ITT; they were instead labeled as officers of Blackburn. The indictment only mentioned ITT as part of the description of Blackburn.

*United States v. Leader Cheese Co.*, 353 F.Supp. 875 (E.D.Wis.1973), is also instructive. In *Leader Cheese*, an indictment was

filed against "Leader Cheese Company" and a copy was mailed to Fred Heim, its purported vice-president. The defendant moved to dismiss the indictment because no "Leader Cheese Company" existed. In an affidavit, Heim asserted that he was the vice-president of "Heim Cheese Co., Inc." and that "Leader Cheese Company" had previously forfeited its corporate charter. The court reasoned as follows in dismissing the indictment:

> It may be true, as the government asserts, that the name "Leader Cheese Company" is used interchangeably with "Heim Cheese Co., Inc.;" it may also be true that Heim Cheese Co., Inc. is the only cheese manufacturer in the vicinity of Lau Creek. The government urges that Heim Cheese Co., Inc. has suffered no prejudice as a result of the misnomer, but such information is not readily apparent from the record before this court nor is it to be found within the four corners of the indictment. Accordingly, the indictment must be dismissed.

*Leader Cheese*, 353 F.Supp. at 876.

As in *Leader Cheese*, the government here asserted that ITT Corporation could be used interchangeably with Blackburn, the unit named in the indictment. As in *Leader Cheese*, however, the indictment speaks for itself and does not make any charge against ITT. Moreover, here the grand jury transcripts affirmatively reveal that the prosecutor and the grand jury did not use "Blackburn" interchangeably with "ITT." To the contrary, the prosecutor initially made an express distinction between the two.

We therefore hold that the prosecutor's attempt to try ITT on this indictment improperly overrode the intent of the grand jury. The grand jury clearly named Blackburn and two of its officers as defendants, not ITT. As the Supreme Court stated in *Ex parte Bain*, 121 U.S. 1, 10, 7 S.Ct. 781, 786, 30 L.Ed. 849 (1887):

> If it lies within the province of a court [or a prosecutor] to change the charging part of an indictment to suit its own notions of what it ought to have been, or what the grand jury would probably have made it if their attention had been called to suggested changes, the great importance which the common law attaches to an indictment by a grand jury, as a prerequisite to a prisoner's trial for a crime, and without which the Constitution says "no person shall be held to answer," may be frittered away until its value is almost destroyed.

Accordingly, the judgment of the district court is reversed.

DUMBAULD, Senior District Judge, concurring:

As stated in the excellent and thorough opinion of Judge Magill, the superseding indictment "upon which the case was eventually tried, named 'ITT Blackburn Company, a Division of International Telephone and Telegraph Corporation.'" The name of ITT before December 31, 1983, (and thus at the date of the four shipments violating the Carter embargo) was International Telephone and Telegraph Corporation.

In my judgement, this would be the normal and valid way of indicting a division of a corporation (as distinguished from a subsidiary corporation) under normal circumstances and ITT would clearly be deemed a defendant in such an indictment.

Here, however, from the grand jury transcript which is in the record before us, it clearly appears that the grand jury did not intend to indict ITT. When the question was raised by a grand juror why ITT was not being indicted *nominatim et literatim*, the government attorney's response, and the grand jury's corresponding action, clearly indicate, as Judge Magill points out, that the grand jury merely "intended to indict Blackburn and not ITT." Hence a judgement of conviction contrary to the intention of the grand jury would be violative of the constitutional rights of ITT under the Fifth Amendment.

Therefore I concur completely in the opinion of the Court and write separately merely to emphasize that a different result might be reached if the relevant grand jury transcript were not before us.