### EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,

v.

### ST. FRANCIS XAVIER PAROCHIAL SCHOOL and St. Francis Xavier Church, Defendants.

### No. CIV. A. 94–314 SSH.

United States District Court,
District of Columbia.

Oct. 28, 1999.

Diane Bradley, Arlene T. Shadoan, Tracy Hudson Spicer, EEOC, Baltimore District Office, Baltimore, MD, for Plaintiff.

Anthony P. Interdonato, James T. Reilly, Interdonato, Reilly & Comstock, Washington, DC, for Defendants.

## OPINION

STANLEY S. HARRIS, District Judge.

Before the Court are plaintiff's motion for partial summary judgment and defendants' motion for summary judgment, the parties' respective oppositions and replies thereto, and the parties' supplemental memoranda on defendants' legal status. Upon consideration of the entire record, the Court grants defendants' motion. "Findings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56 ...." Fed.R.Civ.P. 52(a); *Summers v. Department of Justice*, 140 F.3d 1077, 1079–80 (D.C.Cir.1998). Nevertheless, the Court sets forth its reasoning.

## BACKGROUND

This case was brought by the Equal Employment Opportunity Commission ("EEOC") in 1994 against the St. Francis Xavier Parochial School (the "School") and the St. Francis Xavier Church (the "Church"). As explained more fully below, the School, the Church, and the St. Francis Xavier Child Development Center (the "Child Development Center") are part of the St. Francis Xavier Parish (the "Parish"), which itself is part of the Archdiocese of Washington (the "Archdiocese"). In its complaint, the EEOC alleges that the School and the Church violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213, by refusing to interview Roberta Stein for a Music Teacher position at the School in 1992. Stein has multiple sclerosis and uses a wheelchair. The EEOC further claims that defendants failed to hire Stein because of her disability.

On June 4, 1996, the Court dismissed plaintiff's claims for lack of subject matter jurisdiction. The Court of Appeals reversed, holding that whether defendants had enough employees to be covered by the ADA as an "employer" was not a jurisdictional question. *EEOC v. St. Francis Xavier Parochial School*, 117 F.3d 621,

623–24 (D.C.Cir.1997). With respect to the scope of remand, the Court of Appeals noted that, because it was unclear whether the School, the Church, and the Child Development Center are "distinct legal entities capable of being sued in their own names," the record should be further developed on this issue before the Court could decide whether to aggregate the employees of these entities in order to determine the number of employees defendants actually had. *Id.* at 625–26.

After engaging in additional discovery, the parties filed dispositive motions on the issue of whether defendants meet the definition of an employer under the ADA. On August 5, 1998, the Court granted defendants' motion on the ground that plaintiff had not presented sufficient evidence to establish that, even were the three St. Francis entities to be aggregated, defendants employed "25 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding year."[1] *See* 42 U.S.C. § 12111(5)(A). Plaintiff filed a motion for reconsideration of that decision. On September 14, 1998, the Court granted plaintiff's motion for reconsideration, concluding that it had erred in its initial interpretation of the ADA'a 25–employee requirement and in its previous determination that plaintiff's evidence on that requirement was insufficient. *EEOC v. St. Francis Xavier Parochial School,* 20 F.Supp.2d 66, 68 (D.D.C. 1998). Concluding that plaintiff's evidence was sufficient to survive a motion for summary judgment, the Court renewed its consideration of whether defendants were a covered employer under the ADA. Spe-

cifically, the Court turned to the issue of whether aggregation of employees was required under the theory that the Church, the School, and the Child Development Center constituted a "single employer." *Id.* Nevertheless, uncertainty surrounding defendants' legal status impeded the Court's analysis on the aggregation issue because the record indicated that defendants, as well as the Child Development Center and the Parish, were divisions of the Archdiocese, which is organized as a corporation sole. *Id.* A determination that these entities are divisions of a corporation has two implications. First, it suggests that defendants are not proper parties to the lawsuit because case law reflects that unincorporated divisions of a corporation lack the capacity to sue or be sued. *Id.* at 69. Second, assuming defendants can be sued, it leads to the conclusion that the employees of the Church, the School, and the Child Development Center should be aggregated for the purpose of the 25–employee requirement. *Id.* at 68.

■ The Court at that point declined to make a final determination on defendants' legal status because it found that the parties had not adequately discussed the relationship between the Church, the School, the Child Development Center, the Parish, and the Archdiocese. Accordingly, the Court directed the parties to submit supplemental memoranda addressing defendants' legal status, and deferred consideration of plaintiff's motion for partial summary judgment and defendants' motion for summary judgment pending those submissions.[2] Upon consideration of the

---

1. Because the alleged discriminatory acts took place within two years of the effective date of the ADA, the threshold number of employees in this case is 25, rather than what is now the normal 15.

2. Defendants have filed a motion for appropriate relief with respect to the supplemental memoranda submitted by plaintiff. In that motion, defendants argue that plaintiff improperly submitted a corrected copy of its initial supplemental memorandum, which adds "Exhibit 16" to its submission. Exhibit

16 contains 30 new documents bearing on the issue of whether the Church, the School, and the Child Development Center employed 25 or more employees. Defendants request leave to respond to Exhibit 16. In its response, plaintiff argues that Exhibit 16 is properly before the Court because it was included in its reply memorandum (rather than its corrected copy), and because it is responsive to arguments raised in defendants' supplemental memorandum regarding whether plaintiff has met its burden on the 25–employ-

parties' supplemental memoranda and the entire record, the Court concludes that defendants are entitled to summary judgment because they lack legal capacity to be sued.[3]

## STANDARD OF REVIEW

Summary judgment may be granted only if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering a summary judgment motion, all evidence and the inferences to be drawn from it must be considered in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Mere allegations in the pleadings, however, are not sufficient to defeat a summary judgment motion; if the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *See* Fed. R.Civ.P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## DISCUSSION

Although plaintiff does not deny that defendants are unincorporated divisions of a corporation, it argues that defendants may be sued for violations of the ADA because Federal Rule of Civil Procedure 17(b)(1) gives them the capacity to be sued, the Parish is sufficiently autonomous from the Archdiocese to render defendants suable entities, and religious organizations have been sued for violations of employment discrimination laws in the past. After reviewing the relationships between the different religious entities in this case, the Court concludes that plaintiff's arguments lack merit.

A. *Relationships Between the Religious Entities*

By an act of the United States Congress on May 28, 1948, the Archbishop of Washington was incorporated as a corporation sole.[4] *See* Defs.' Supp. Mem., Ex. 2. As an entity, the Archbishop of Washington is more commonly referred to as the Archdiocese. *See* Aff. of Rev. Bava ¶ 2.[5] The Archdiocese possesses traditional corporate attributes, such as the powers to contract, to acquire property, and to sue and be sued. *See* Defs.' Supp. Mem., Ex. 2. The Archdiocese is made up of all of the Catholic parishes and related facilities within its territorial jurisdiction, which encompasses the District of Columbia and five surrounding Maryland counties. *See* Dep. of Rev. Bava, April 21, 1998 ("Bava Dep. II"), 6:4—6:15. Although the Canon Law of the Roman Catholic Church views

---

ee issue. The Court finds it unnecessary to consider Exhibit 16 because, as plaintiff correctly notes, the Court has already concluded that plaintiff's evidence on whether the Church, School, and Child Development Center employed at least 25 employees is sufficient to survive a summary judgment motion. Accordingly, the Court denies as moot defendants' motion for appropriate relief.

**3.** Because the parties' memoranda on defendants' legal status were filed as supplements to their cross-motions for summary judgment, the Court treats defendants' claim that they lack legal capacity to be sued as part of their motion for summary judgment. A court may appropriately consider this issue in a summary judgment motion. *See, e.g., Wade v. Dole*, 631 F.Supp. 1100, 1105 (N.D.Ill.1986);

*Ward v. Baldwin Lima Hamilton Corp.*, 1985 WL 2830, *1 (E.D.Pa.1985).

**4.** The word "sole" refers to the fact that an individual, the Archbishop, has the capacity of a corporation. When the Archbishop is replaced by his successor, the corporation remains unaffected because the 1948 act of Congress extends incorporation status to the Archbishop's successors, and states that the corporation shall have "perpetual succession." *See* Defs.' Supp. Mem., Ex. 2.

**5.** In various exhibits attached to the parties' memoranda, David Bava is alternatively referred to as "Father" and "Reverend." For the sake of consistency, the Court refers to him as "Reverend Bava."

each parish as a separate entity for religious purposes, the parishes are not separately incorporated under civil law. *See* Aff. of Rev. Bava ¶ 2.

St. Francis Xavier Parish (the "Parish") is a parish within the territorial jurisdiction of the Archdiocese. It operates independently of other parishes within the jurisdiction. The Archdiocese owns all of the Parish's property—the Parish does not own any independent assets.[6] *See EEOC v. St. Francis Xavier Parochial School,* 20 F.Supp.2d at 68. The Parish consists of the Church, the School, the Child Development Center, an adjacent rectory, and a convent. *See* Bava Dep. II, 7:15—7:19. The Church operates the School and the Child Development Center. *See* Compl. at ¶ 4; Answer at ¶ 4.

The Archdiocese exerts varying degrees of control over different aspects of the Parish's operations. As to financial matters, the Archdiocese maintains control over the Parish's budget by requiring the Parish to submit an annual financial report on all of its operations and to undergo periodic financial audits. Although the Archdiocese does not oversee the Parish's daily expenditures, Archdiocese approval is required for any expenditure exceeding $10,000. *See* Bava Dep. II, 18:2—22:4.

As to personnel matters, the Archdiocese appoints the pastor and, through the Archdiocese's personnel director, helps to determine the staffing of other priests assigned to work at the Parish. The Archdiocese also influences other Parish personnel decisions, such as the hiring of the School's teaching staff, by providing guidelines on appropriate hiring criteria. *See id.* at 14:4—15:10.

### B. *Defendants' Capacity To Be Sued*

■ As discussed above, defendants— the Church and the School—are part of the Parish, which itself is part of the larger Archdiocese. Because neither defendant is separately incorporated, defendants are in fact unincorporated divisions of a corporation. As such, their presence in this case triggers a line of precedent holding that unincorporated divisions of a corporation lack legal capacity to be sued. *See, e.g., United States v. ITT Blackburn Co., a Div. of ITT,* 824 F.2d 628, 631 (8th Cir.1987) (accepting as valid concession that an "unincorporated division cannot be sued or indicted, as it is not a legal entity"); *Griffith v. Keystone Steel and Wire, a Div. of Keystone Consol. Indus., Inc.,* 887 F.Supp. 1133, 1138 (C.D.Ill.1995) (hold-

---

**6.** Plaintiff asserts that the Church, School, and Child Development Center own assets independently of the Archdiocese. *See* Pl.'s Mem. at 6–7. In support of this assertion, plaintiff cites an annual budget and financial report submitted by the Church to the Archdiocese for 1992–93, which allegedly lists Church-owned assets, and two statements made by Reverend Bava during his deposition on September 15, 1994, which indicate that the Parish and the Church actually own property. *See* Dep. of Rev. Bava, Sept. 15, 1994 ("Bava Dep. I"), 39:15–16 and 58:14–18. The Court finds that the record does not support plaintiff's claim. First, the report cited by plaintiff does not indicate that the Church owns title to the assets listed. If anything, it suggests that the Archdiocese owns the assets listed because the fact that it was submitted to the Archdiocese evidences the Archdiocese's financial control over the Church. Second, Reverend Bava's statements must be viewed in their larger context. In his same September 15, 1994, deposition, Reverend Bava testi-

fied that the "parish is one entity, part of a corporation solely of the Archdiocese of Washington." Bava Dep. I, 39:10–11. As smaller units of the corporate entity, the Parish and the Church only own property through the Archdiocese; the act of Congress incorporating the Archbishop states that the corporation, not its divisions, "may acquire real and personal property." Defs.' Supp. Mem., Ex. 2. Indeed, Reverend Bava's deposition testimony on April 21, 1998, clarifies this issue by indicating that the Archdiocese owns the Church, School, and Child Development Center. Bava Dep. II, 5:17—8:15. Moreover, his June 10, 1998, affidavit states that the Archdiocese owns all of the assets used by these entities. Aff. of Rev. Bava ¶ 4. Thus, the record clearly shows that defendants do not independently own any assets. Because no "reasonable jury" could find otherwise, plaintiff's assertions are insufficient to create a genuine issue of material fact. *Air Transport Assoc. of America v. Lenkin,* 899 F.2d 1265, 1267 (D.C. Cir. 1990) (per curiam).

ing that unincorporated division of a parent corporation cannot be sued); *Salzstein v. Bekins Van Lines, Inc.*, 747 F.Supp. 1281, 1282 n. 1 (N.D.Ill.1990) (noting that "by definition a corporate division is not a separate legal entity and hence is not suable"); *see also United States v. BCCI Holdings (Luxembourg), S.A.*, 833 F.Supp. 32, 38–39 (D.D.C.1993) (discussing additional cases holding that unincorporated divisions cannot be sued). The rationale for this precedent is, above all, pragmatic, as an unincorporated division does not possess separate assets; all of its assets are owned by the corporation. *See Albers v. Church of Nazarene*, 698 F.2d 852, 857 (7th Cir.1983); *Griffith*, 887 F.Supp. at 1138. Thus, "[u]nless the organization is liable there can be no levy of execution against the division's assets, and if the organization is not liable none of its assets can be used to satisfy the judgment." *Albers*, 698 F.2d at 857.

■ Plaintiff argues that the precedent denying unincorporated divisions of a corporation legal capacity to be sued does not apply because Federal Rule of Civil Procedure 17(b) makes defendants suable entities for the purpose of this case. In relevant part, Rule 17(b) states:

> The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of the individual's domicile. The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized. In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held, except (1) that a partnership or other unincorporated association, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States . . . .

Plaintiff argues under Rule 17(b) that, although the law of the District of Columbia does not allow unincorporated associations to be sued, the exception in subsection (1) applies because defendants are being sued for violations of federal law. Therefore, defendants do not lack legal capacity to be sued. *See* Pl.'s Supp. Mem. at 7–10.

The Court disagrees. Implicit in plaintiff's argument is the assumption that defendants are in fact "unincorporated associations" under Rule 17(b)(1). The Court, however, is unaware of any reason to treat a division of a corporation in this manner. It is well-settled that the determination of whether defendants are unincorporated associations under Rule 17(b)(1) is governed by federal law. *See Associated Students of Univ. of Cal. v. Kleindienst*, 60 F.R.D. 65, 67 (C.D.Cal.1973) (citing cases). Although the term "unincorporated association" has not been defined uniformly under federal law, the definitions propounded by courts are substantially identical. *See, e.g., Committee for Idaho's High Desert v. Yost*, 881 F.Supp. 1457, 1469 n. 1 (D.Idaho 1995) (citing "nearly identical definitions of 'unincorporated association' for purposes of the Rule 17(b)(1)'s federal law exception"), *rev'd in part on other grounds*, 92 F.3d 814 (9th Cir.1996). For example, the court in *Penrod Drilling Co. v. Johnson*, 414 F.2d 1217, 1222 (5th Cir.1969), defined an unincorporated association as "a body of persons acting together, without a charter, but upon methods and forms used by a corporation, for the prosecution of some common enterprise"; the court in *Local 4076, United Steelworkers v. United Steelworkers*, 327 F.Supp. 1400, 1403 (W.D.Pa. 1971) defined it as "a voluntary group of persons, without a charter, formed by mutual consent for the purpose of promoting a common enterprise or prosecuting a common objective"; and the court in *Murray v. Sevier*, 50 F.Supp.2d 1257, 1274 (M.D.Ala.1999), defined it as "a body of persons united without a charter, but upon the methods and forms used by incorporated bodies for the prosecution of some en-

terprise."[7] While all of these definitions describe an unincorporated association as a collection of persons working together for a common objective, they also describe it as an entity operating without a corporate charter. The Court finds this latter characteristic determinative of whether an unincorporated division of a corporation meets the definition of an unincorporated association. Unlike the unincorporated associations defined above, a division of a corporation does operate with a charter—the charter of the larger corporation.[8] Although the division is not separately incorporated, it is still governed by the terms of the corporate charter and still enjoys corporate status because it is a unit of the larger corporation. Thus, the Court concludes that the federal law definition of an unincorporated association does not encompass an unincorporated division of a corporation.

The Court's construction of "unincorporated association" comports with the policy behind Rule 17(b)(1). The federal law exception embodied in Rule 17(b)(1) serves two purposes. First, it prevents state law from frustrating the enforcement of federal substantive rights where state law does not grant unincorporated associations and partnerships the capacity to be sued. 2 *Moore's Manual of Federal Practice & Procedure* § 13.02(7) (1998). Second, it "eliminates the need to individually sue all members of the association or partnership, if the membership is so large that joinder is impracticable to maintain suit against the members as a class." *Id.; accord Law v. National Collegiate Athletic Ass'n,* 167 F.R.D. 464, 474–75 (D.Kan.1996), *vacated on other grounds,* 96 F.3d 1337 (10th Cir. 1996). Neither of these interests, however, is advanced by treating an unincorporated division of a corporation as an unincorporated association under Rule 17(b)(1). In the first place, the need to prevent state law from frustrating the enforcement of federal law does not exist where an unincorporated division of a corporation is being sued because the plaintiff can usually bring suit against the corporation. *See* Harry G. Henn & John R. Alexander, *Laws of Corporations and Other Business Enterprises* 148, 1020 (3d ed.1983) (noting that one of the traditional attributes of a corporation is its capacity to sue and be sued). Moreover, when a monetary claim is being asserted, allowing a corporate division to be sued as an unincorporated association would not, itself, insure the enforcement of federal rights because, as noted, the division does not independently own any assets; the corporation must also be adjudged liable in order to satisfy the judgment out of its assets. *Albers,* 698 F.2d at 857; *Griffith,* 887 F.Supp. at 1138. Nor would making an unincorporated division of a corporation subject to suit advance Rule 17(b)(1)'s second policy rationale because a plaintiff's ability to sue the corporation obviates the need to avoid lengthy and complicated joinder of defendants. In short, the policy behind Rule 17(b)(1) does not dictate that unincorporated divisions of a corporation be given legal capacity to be sued.[9]

---

**7.** The dictionary defines an unincorporated association as a "confederation of individuals organized for a specific purpose which may or may not be profit making but which is not chartered as a corporation." *Black's Law Dictionary* 111–12 (5th ed.1979).

**8.** In this case, defendants are governed by the charter of the Archdiocese—the private law enacted by Congress incorporating the Archdiocese as a corporation sole. *See* Defs.' Supp. Mem., Ex. 2.

**9.** This construction of "unincorporated association" is also consistent with the rationale for denying unincorporated divisions of a corporation the capacity to be sued in the first place. As discussed, this rationale arises out of an unincorporated division's lack of independent assets: because any judgment against it must be satisfied out of the corporation's assets, the corporation must be named, and adjudged liable, as a party. There is no indication that treating a division of a corporation as a suable unincorporated association under Rule 17(b)(1) in any way removes this obstacle to satisfying a judgment against the division. Absent the ability to satisfy a judgment against the larger corporation, a plaintiff

Case law confirms the Court's reading of Rule 17(b)(1). At least one court has held that an unincorporated division of a corporation is not an unincorporated association under Rule 17(b)(1). *See Saud v. Chicago Police Dept.*, 1986 WL 8373, at *1 (N.D.Ill. 1986) (holding that Chicago Police Department was not an unincorporated association because it was part of the City of Chicago, an incorporated entity). Moreover, while courts construing Rule 17(b)(1) have held that an unincorporated association includes, *inter alia*, a labor union, *Local 4076, United Steelworkers*, 327 F.Supp. at 1403, a student government organization at a university, *Associated Students of Univ. of Cal.*, 60 F.R.D. at 67, a business venture formed to purchase interests in coal leases, *Delta Coal Program v. Libman*, 554 F.Supp. 684, 687 (N.D.Ga. 1982), and an environmental organization, *Committee for Idaho's High Desert*, 881 F.Supp. at 1469, the Court is unaware of any case squarely holding that the term includes an unincorporated division of a corporation.[10]

In sum, the federal law definition of an unincorporated association, the policy behind Rule 17(b)(1), and case law support the Court's conclusion that Rule 17(b)(1)'s reference to an unincorporated association does not include an unincorporated division of a corporation. Accordingly, Rule 17(b)(1) does not give defendants legal capacity to be sued.

In addition to invoking Rule 17(b)(1), plaintiff also seeks to circumvent the bar on suing unincorporated divisions by alleging that the Parish "operates independently within the Archdiocese." Pl.'s Mem. at 11. From this asserted premise, plaintiff concludes that defendants can be sued in their individual capacities. *Id.* Plaintiff's argument misses the mark. First, even if plaintiff is correct that the Parish operates independently within the Archdiocese, it does not follow that defendants—smaller units within the Parish—can be sued individually. Indeed, following plaintiff's logic, the Parish is the properly suable entity because it is the locus of control; according to plaintiff, the Parish executes contracts on behalf of defendants and the Child Development Center, and holds a bank account separate from the Archdiocese. *Id.* Second, plaintiff has not demonstrated the legal significance of the Parish's, or defendants', purported independence from the Archdiocese. The Court does not find the independence allegedly enjoyed by the Parish and defendants to be material to whether defen-

---

gains little by suing one of the corporation's unincorporated divisions.

In this case, plaintiff requests both injunctive and monetary relief. Thus, in order to satisfy a possible monetary judgment against defendants, the Archdiocese would also have to be adjudged liable as a party. The Court notes, however, that even if plaintiff requested only injunctive relief, it would still not treat defendants as suable entities under Rule 17(b)(1) because, as discussed above, the federal law definition of an unincorporated association does not encompass an unincorporated division of a corporation.

**10.** The Court has found only one case suggesting that an "unincorporated association" can refer to a component of a corporation. In *Health Care Equalization Comm. of the Iowa Chiropractic Soc'y v. Iowa Med. Soc'y*, 501 F.Supp. 970 (S.D.Iowa 1980), a committee of the Iowa Chiropractic Society, Inc., was formed for the purpose of bringing suit on behalf of the corporation. The court in that case held that, although the committee was not the type of entity "ordinarily considered an association," it came within the federal law definition of an unincorporated association. *Id.* at 976–77. That opinion, however, does not disturb the Court's conclusion as to the scope of "unincorporated association." First, as the court in that case noted, the committee was a very unique entity; it was given the power to adopt its own bylaws and was "delegated" the power to sue by the board of directors. *Id.* at 976. Second, to the extent that the committee was a typical unincorporated division of a corporation, the Court disagrees with *Iowa Med. Soc'y* 's construction of an unincorporated association; because the committee was the party suing, the court in *Iowa Med. Soc'y* probably did not have occasion to consider the practical reason for denying unincorporated divisions of a corporation the capacity to be sued, namely, that they do not own separate assets.

dants have legal capacity to be sued. To the contrary, they lack independence in at least one significant regard: neither defendants nor the Parish independently own any assets.[11] *See Albers,* 698 F.2d at 857. In short, plaintiff's argument regarding the Parish and defendants' independence is without merit.[12]

 Finally, the religious character of the corporation involved in this case does not remove the normal prohibition on suing unincorporated divisions of a corporation. Although plaintiff cites to cases in which religious organizations were sued for violating employment discrimination laws, these cases do not suggest that the nature of an incorporated religious entity is such that its unincorporated divisions have the legal capacity to be sued. Nor is there any reason to fragment the legal status of an incorporated religious entity in this manner. The Court finds *F.E.L. Publications, Ltd. v. Catholic Bishop of Chicago,* 754 F.2d 216 (7th Cir.1985), instructive on this point. In that case, the Catholic Bishop of Chicago was organized as a corporation sole under Illinois law and, as such, owned all of the real and personal property in the Chicago Archdiocese. *Id.* at 221. The question before the court was whether the plaintiff could recover against the Bishop for tortiously interfering in the plaintiff's business relationship with one of the parishes in the Chicago Archdiocese. The court held that recovery was legally impossible because "the parishes within the Archdiocese are not legal entities separate and independent from the Catholic Bishop, but are subsumed under the Cath-

olic Bishop." *Id.* Thus, *F.E.L. Publications* makes clear that an incorporated religious organization constitutes a single legal entity, and that unincorporated divisions of that organization lack any independently recognized legal status. Because the Archdiocese of Washington is incorporated as a corporation sole and holds title to all Archdiocese assets, its unincorporated divisions also lack any independently recognized legal status.

In sum, the Court concludes that the normal prohibition on suing unincorporated divisions of a corporation applies in this case. Because defendants lack legal capacity to be sued, they are entitled to judgment as a matter of law. Accordingly, the Court grants defendants' motion for summary judgment.[13] As the Church and the School are the only defendants named in the complaint, the entry of summary judgment in their favor leaves no remaining defendants in this case. *Cf. ITT Blackburn Co., A Division of ITT,* 824 F.2d at 630–33 (holding that indictment of unincorporated subdivision does not serve to indict corporation as well).

### CONCLUSION

For the foregoing reasons, the Court grants defendants' motion for summary judgment, and denies as moot plaintiff's motion for partial summary judgment and defendants' motion for appropriate relief. An appropriate Judgment accompanies this Opinion.

---

11. Their lack of financial independence is further evidenced by the requirements that the Parish submit annual financial reports, undergo periodic audits, and seek Archdiocese approval for large expenditures.

12. In advancing its argument, plaintiff also asserts that "St. Francis Xavier holds itself out to the community as an independent agent in that the church, school and day care center operate in its own name" and the "Pastor executes contracts on [their] behalf." Pl.'s Mem. at 11. Plaintiff, however, does not

discuss the legal significance of the Parish's allegedly holding itself out as an independent agent.

13. Because defendants prevail in their summary judgment motion on the ground that they lack legal capacity to be sued, the Court finds it unnecessary to consider whether defendants meet the definition of an employer under the ADA. Thus, the Court denies as moot plaintiff's motion for partial summary judgment on this issue.

## *JUDGMENT*

For the reasons stated in the accompanying Opinion, it hereby is

ORDERED, that judgment is entered in favor of defendants.

SO ORDERED.