Sarah ALBERS, a minor, by her father and next friend, Vinton L. ALBERS, Plaintiff-Appellant,

v.

CHURCH OF THE NAZARENE and the Lombard Church of the Nazarene Day Care Center, Defendants-Appellees.

No. 82–1647.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 7, 1982.

Decided Jan. 17, 1983.

John A. O'Malley, O'Malley & O'Malley, Ltd., Chicago, Ill., for plaintiff-appellant.

Barry L. Kroll, C. Barry Montgomery & David E. Morgans, Chicago, Ill., for defendants-appellees.

Before BAUER and POSNER, Circuit Judges, and HOFFMAN,* Senior District Judge.

POSNER, Circuit Judge.

This is an appeal by the plaintiff in a personal-injury case from a judgment entered on a jury verdict for the defendants. Federal jurisdiction is based on diversity of citizenship. The applicable substantive law is that of Illinois.

In 1976 the plaintiff, Sarah Albers, age 5—a professional model despite her youth—was attending the Lombard Church of the Nazarene Day Care Center. There was a tree with low branches in the center's playground. Testifying years later at the trial, Sarah, the only witness to the accident, described what happened: "I had a pail, and I put sand in it, and I put it on the tree branch. And the tree branch came down." The branch went into one of her eyes, causing blindness in that eye and some disfigurement. The offending branch and the other low branches were later pruned.

The district judge refused to give several instructions requested by the plaintiff. One relates to landowners' liability for an accident to a child. The district judge held that the liability standard is ordinary negligence. The plaintiff argues that under Illinois law a landowner (or land occupier), whether or not guilty of ordinary negligence, is liable for an injury to a child caused by a condition on the land if the defendant knew or should have known that there was a reasonably foreseeable risk of injury to young children, should have foreseen that young children would go on the land, and could have eliminated the hazard at a slight cost relative to the danger to the children; and that she was entitled to an instruction setting forth this alternative basis of liability.

The language of the proposed instruction is drawn almost verbatim from *Kahn v. James Burton Co.,* 5 Ill.2d 614, 625, 126 N.E.2d 836, 842 (1955). The plaintiff in that case, an 11-year-old boy, had been injured while playing on a lumber pile. One of the main issues in the trial and intermediate appellate courts was whether the lumber pile was an attractive nuisance, but the Illinois Supreme Court decided that the requirement of "attraction" had given rise to inconsistent results and therefore "the only proper basis for decision in such cases dealing with personal injuries to children are the customary rules of ordinary negligence cases." 5 Ill.2d at 624, 126 N.E.2d at 841. If the opinion had stopped at this point, there would be no basis for the instruction requested in this case, but the court went on to explain that while generally "an owner or one in possession and control of premises is under no duty to keep them in any particular state or condition to promote the safety of trespassers or others who come upon them without any invitation, express or implied . . .[,] an exception exists where the owner or person in possession knows, or should know, that young children habitually frequent the vicinity of a defective structure or dangerous agency existing on the land, which is likely to cause injury to them because they, by reason of their immaturity, are incapable of appreciating the risk involved, and where the expense or inconvenience of remedying the condition is slight compared to the risk to the children. In such cases there is a duty . . . to exercise due care to remedy the condition or otherwise protect the children from injury resulting from it. The element of attraction is significant only insofar as it indicates that the trespass should be anticipated, the true basis of liability being the foreseeability of harm to the child." 5 Ill.2d at 625, 116 N.E.2d at 841–42 (citation omitted).

The two passages we have quoted, one invoking "the customary rules of ordinary negligence cases," the other setting forth a

* Of the Eastern District of Virginia.

more detailed standard of care applicable to injuries to children as a result of dangerous land conditions, have led some plaintiffs in Illinois to attempt in cases such as this to present alternative theories of liability to the jury. The plaintiff in *Corcoran v. Village of Libertyville,* 73 Ill.2d 316, 323, 22 Ill.Dec. 701, 702, 383 N.E.2d 177, 178 (1978), the case most heavily relied on by the plaintiff in this case, was allowed to do just that, but the cases are different in a crucial respect. In *Corcoran,* a two-year-old child fell into a ditch in the defendant's park. The child's status on the land was unclear. He may have been a licensee (whom tort law usually treats as the equivalent of a trespasser), or he may have been an invitee. See 73 Ill.2d at 329, 22 Ill.Dec. at 704–05, 383 N.E.2d at 180–81. If the former, he was entitled to no higher level of care than the *Kahn* decision had required. But if he was an invitee he was entitled to a higher standard of care. "In ordinary negligence, the common law status of Matthew Corcoran on the premises where he was injured becomes relevant in establishing the duty owed him. *The highest duty imposed by law upon an owner or occupier of land to a person on his premises is that owed to an invitee.* In reviewing the counts pleaded by plaintiffs in ordinary negligence, we will assume that Matthew Corcoran was an invitee to whom defendants owed a duty to maintain the premises in a reasonably safe condition and to warn of dangerous, nonobvious conditions." 73 Ill.2d at 329, 22 Ill. Dec. at 705, 383 N.E.2d at 181 (emphasis added).

A glance back at the longer passage quoted from *Kahn* will confirm that the standard adopted there is intended to protect children who are trespassers or licensees rather than invitees. The landowner is liable only if he knew or had reason to know that "young children habitually frequent the vicinity" of a dangerous condition on his land. This requirement would be superfluous in cases involving children who are invitees, as children in schools or day care centers are.

■ The jury in this case found that the defendants had not breached the high standard of care ("the highest duty") they owed the plaintiff as an invitee. Having so found, the jury could not consistently have found that the defendants had breached the lower standard of care that they would have owed Sarah if she had simply wandered into the playground from the street. *Cummings v. Jackson,* 57 Ill.App.3d 68, 71–72, 14 Ill.Dec. 848, 850–51, 372 N.E.2d 1127, 1129–30 (1978), holds that if the child plaintiff's status as an invitee is conceded, the liability standard is ordinary negligence and dismissal of a separate count based on the *Kahn* standard is therefore not prejudicial.

The only discordant note is the statement in *Corcoran,* repeated in *Bazos v. Chouinard,* 96 Ill.App.3d 526, 531, 51 Ill.Dec. 931, 935, 421 N.E.2d 566, 570 (1981), that "it would indeed be incongruous to conclude that a condition which did not pose any foreseeable risk to children did pose such a risk to invitees." 73 Ill.2d at 329, 22 Ill.Dec. at 705, 383 N.E.2d at 181. This makes it sound as if the duty of care to an invitee is set on the assumption that the invitee is always an adult, in which event *Kahn* could require a higher standard of care to a child, even though the child was an invitee, than the standard of ordinary negligence would require. But this view attributes to the Illinois Supreme Court a more radical intention than we find in the opinion: not just to modify the attractive-nuisance doctrine but to establish a separate standard of care for all cases involving accidents to children caused by hazardous conditions on land. This interpretation would also be contrary to other language of *Corcoran* that we have quoted, to language in other Illinois cases such as *Rahn v. Beurskens,* 66 Ill.App.2d 423, 428, 213 N.E.2d 301, 304 (1966) (*Kahn* "adopts the rule that the true basis of liability to a child is the foreseeability of harm to the child and customary rules of negligence apply"), to the holding in *Cummings,* and to basic principles of negligence law, which do not make the defendant's duty of care invariant to the type of victim he is likely to encounter. See, with particular reference to children, Prosser, Handbook of the Law of Torts 172–73 (4th ed. 1971). The level of

care required of a day care center is not determined by assuming that it really has an adult clientele, and this case was not tried on any such assumption.

■ The plaintiff wanted to present still another theory of liability to the jury. Regulations of the State of Illinois require that day care centers be safely equipped and maintained with due regard for the age of the children, and the plaintiff asked the judge to instruct the jury that "conduct in violation of the law is presumed negligence." Since the regulations are general in terms, and so far as is relevant to this case amount to no more than a requirement that day care centers observe due care, it is hard to see what such an instruction would add to the standard instruction on negligence that the judge gave. But in any event the judge's refusal to give the instruction was not erroneous. Some states give presumptive or even conclusive weight to the violation of a safety regulation as evidence of negligence, but not Illinois. Here the violation of a safety regulation is only prima facie evidence of negligence. *Davis v. Marathon Oil Co.,* 64 Ill.2d 380, 390, 1 Ill.Dec. 93, 97, 356 N.E.2d 93, 97 (1976); *Niemann v. Vermilion County Housing Authority,* 101 Ill.App.3d 735, 740, 57 Ill.Dec. 156, 160, 428 N.E.2d 706, 710 (1981). As explained in *Johnson v. Pendergast,* 308 Ill. 255, 262, 139 N.E. 407, 409 (1923), "That a certain fact is made by law or statute prima facie evidence of the existence of another [fact] . . . merely determines the verdict or finding if no other evidence is introduced. . . . As soon as opposing evidence is received the case is to be determined upon all the evidence—the prima facie evidence and all other evidence—and the question is whether the weight preponderates in favor of the party having the burden of proof," here the plaintiff. Since the plaintiff put in evidence that the defendants had violated the regulations she got all the mileage out of the regulations she was entitled to. She was not entitled to an instruction that the jury probably would have understood to mean that proof of a violation of the regulations shifted the burden of proof on negligence to the defendants.

■ The plaintiff also complains about the judge's refusal to instruct the jury not to consider whether the plaintiff might have been guilty of contributory negligence. Under the law of Illinois a child under the age of 7 is deemed incapable of contributory negligence, and Sarah was only 5 when the accident occurred. *Eleopoulos v. Dzakovich,* 94 Ill.App.3d 595, 601, 49 Ill.Dec. 960, 965, 418 N.E.2d 980, 985 (1981). The defendants therefore could not have asserted a defense of contributory negligence. The giving of an instruction on an issue not in the case can only confuse the jury, and the *Eleopoulos* case holds that it should not be given—it is "extraneous."

■ But the plaintiff argues that the defendants' counsel in his closing argument to the jury suggested she was negligent, and therefore the judge should have instructed the jury to disregard the suggestion. If the premise were correct the conclusion would be too, but it is not. True, the defendants' counsel led off his closing argument by quoting Sarah's description of how the accident had occurred, but his next sentence was, "That is what happened, and that is really all we know about exactly what happened that day." In other words, nothing in the circumstances of the accident indicated that it was caused by the defendants' negligence. Later he stated flatly, after again repeating Sarah's description of the accident, "That conduct was not negligence on the part of Sarah." And at the end of his argument he stated: "I'm not standing here telling you it is Sarah's fault." These words could of course be spoken in a manner designed to insinuate the precise opposite of their overt meaning, but we cannot tell that from a transcript; in matters of inflection we depend entirely on the alertness of the district judge.

■ The defendants' counsel could not be forbidden to make any reference at all to Sarah's role in the accident. That role affected the defendants' duty of care. If children were inanimate they would be easy to protect from harm; the more active and ungovernable they are, the more diffi-

cult it is to protect them. In addition, Sarah's role in the accident was relevant to determining the cause of the accident. There are two steps in analyzing a defendant's tort liability. The first is determining whether he breached his duty of care, the second whether the breach was the cause or at least a cause of the accident. The defendants' counsel was entitled to argue to the jury that even if the defendants were careless they were not liable, because the sole cause of the accident was not any act or omission on their part but Sarah's conduct. The distinction between duty and cause would be clear enough if, though the defendants had operated an unsafe day care center, Sarah had been injured after leaving the center, or—coming closer to the facts of this case—by swallowing a piece of chalk. In such a case the defendants would be permitted to argue to the jury that the accident had been caused by Sarah alone, although they would not be permitted to argue that it had been caused by her negligence. True, the line is a fine one because attributions of causal responsibility often have overtones of moral blameworthiness. See Borgo, *Causal Paradigms in Tort Law,* 8 J. Legal Stud. 419, 439–40 (1979). But we do not think the law of Illinois forbids a defendant to argue that the conduct of a young child was the sole cause of an accident, though it does forbid him to argue that the child was negligent.

The plaintiff also objects to the district judge's refusal to submit separate verdict forms for each of the two defendants, as a result of which the jury had to find both negligent in order to give judgment for the plaintiff. The plaintiff speculates that maybe the jury believed that the Church, which owned the premises used by the Day Care Center, including the playground where the accident occurred, had been negligent in failing to prune the tree before the accident but that the Day Care Center had not been negligent in failing to prevent Sarah from hanging her pail on one of the branches; if so, the jury would have had to give judgment for both defendants. But if the jury was confused the fault was the plaintiff's for naming the Day Care Center as an additional defendant. This was both pointless, because the Church is fully liable for the negligence of its staff, whether or not that staff has an organizational title, and improper, because a tort plaintiff may not multiply defendants by breaking up a corporation or other institution into its organizational components when those components have no separate legal identity. If you are injured because of a defect in a Chevrolet, you may sue General Motors and the dealer and individual employees of either but you may not sue the Chevrolet Division of General Motors or the dealer's maintenance department. The reason is practical. An unincorporated division has no separate assets; all its assets are owned by the organization of which it is a part. Unless the organization is liable there can be no levy of execution against the division's assets, and if the organization is not liable none of its assets can be used to satisfy the judgment. A plaintiff therefore has nothing to gain in a practical sense by naming an unincorporated division as an additional defendant and if the result of doing so is to confuse the jury he has no one to blame but himself.

Last, the plaintiff argues that the evidence of the defendants' negligence was so overwhelming that she was entitled to judgment in her favor notwithstanding the verdict. She points in particular to evidence that it would have cost only $20 to prune the offending tree. The cost of care is highly relevant in determining whether there has been a want of care, but so are the benefits. See *Bezark v. Kostner Manor, Inc.,* 29 Ill.App.2d 106, 111, 172 N.E.2d 424, 426–27 (1961); *EVRA Corp. v. Swiss Bank Corp.,* 673 F.2d 951, 958 (7th Cir.1982). If an accident is extremely improbable the fact that it could have been prevented at a low cost does not show that the failure to incur that cost must have been negligent. Of all the things that are dangerous to young children the branches of a tree must be among the least so. We doubt that an ordinarily prudent parent would think of pruning the branches of the trees in his back yard to prevent an accident to his

children; and whatever we may think on the subject we do not think a rational jury would have to regard such a parent, or the defendants in this case, as imprudent.

█ Nor was the jury required to believe the plaintiff's expert witness, a consultant in playground management who testified that the defendants were negligent to leave the tree unpruned. After first stating that he testified for plaintiffs and defendants with about equal frequency, the consultant admitted to having testified for plaintiffs in 107 out of 111 cases. The list of his cases had been prepared by his secretary and he testified, rather incredibly as it seems to us, that the numbers had evened up since the list was prepared; but he did not furnish a current list. He also admitted having formed his initial judgment that the defendants in this case were negligent from a letter written to him by the plaintiff's lawyer, without attempting to make his own investigation of the facts. The letter had enclosed a retainer of $150.

The professional expert witness who testifies with scant regard for the truth is an old problem in tort as in other areas of litigation. "Experts are nowadays often the mere paid advocates or partisans of those who employ and pay them, as much so as the attorneys who conduct the suit. There is hardly anything, not palpably absurd on its face, that cannot now be proved by some so-called 'experts.'" *Keegan v. Minneapolis & St. L.R.R.*, 76 Minn. 90, 95, 78 N.W. 965, 966 (1899). It is doubtful whether the plaintiff's expert should have been allowed to testify at all; it is certain that the jury was not required to believe him.

AFFIRMED.