Roy GRIFFITH, Plaintiff,

v.

KEYSTONE STEEL AND WIRE, A DIV. OF KEYSTONE CONSOLIDATED IN-DUSTRIES, INC., Charlie Cutting, Lee Langley, Harold Scoby, Rick Jay, and Eric Eberly, Defendants.

No. 93–1504.

United States District Court, C.D. Illinois.

May 12, 1995.

Ambrose V. McCall, Harvey & Stuckel, Peoria, IL, for plaintiff.

Michael R. Lied, Husch & Eppenberger, Peoria, IL, for defendant Keystone.

James E. Konsky and Susan Linn Perkins, Vonachen, Lawless, Trager & Slevin, Peoria, IL, for defendant Cutting.

Michael D. Gifford, Peoria, IL, for defendants Langley, Scoby, Jay and Eberly.

## ORDER

MIHM, Chief Judge.

This matter comes before the Court on Defendant Keystone's Motion to Dismiss Complaint (# 68) and Motion for Summary Judgment (# 69). The Court has also raised a subject matter jurisdiction issue *sua sponte.* The Court ordered the parties to brief the issue of whether Title VII provides a cause of action for an employee who claims to have been the victim of sexual harassment by a supervisor or co-worker of the same gender. The Court's request prompted Keystone's Motion to Dismiss (# 89), Charlie Cutting's Motion to Dismiss Count III (# 91), and Langley, Scoby, Jay, and Eberly's Supplemental Motion to Dismiss Counts VI–VII, XI–XIV & XVIII–XXI of the Amended Complaint (# 86). For the reasons set forth below, the Court holds that Title VII does not bar a same-sex sexual harassment suit, and Defendants' Motions to Dismiss on that issue are DENIED (# 86, # 89, # 91). Keystone's Motion to Dismiss (# 68) and Motion for Summary Judgment (# 69) are GRANTED.

### *Same–Sex Sexual Harassment Under Title VII*

 When considering a motion to dismiss, the Court accepts the factual allegations of the complaint as true and draws all reasonable inferences from the allegations in the plaintiff's favor. *Wiemerslage v. Maine Tp. High School Dist. 207,* 29 F.3d 1149, 1151 (7th Cir.1994). A motion to dismiss will only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

Griffith, a maintenance electrician for Keystone, alleges that between October 1992 and early January 1993, he was continually subjected to sexually suggestive comments and improper physical sexual contacts by Defendant Charlie Cutting, a foreman, under the supervision of or with the knowledge of foremen, supervisors, or managers, Defendants Lee Langley, Harold Scoby, Rick Jay, and

Eric Eberly. Defendants contend that same-sex sexual harassment is not actionable under Title VII.

In *Goluszek v. Smith*, 697 F.Supp. 1452, 1456 (N.D.Ill.1988), the court held that even if the male plaintiff was harassed by male co-workers "because" he was male, that "was not the type of conduct Congress intended to sanction when it enacted Title VII." *See also Garcia v. Elf Atochem North America*, 28 F.3d 446, 451–52 (5th Cir.1994)[1]; *Benekritis v. Johnson*, 882 F.Supp. 521 (D.S.C. 1995); *Myers v. City of El Paso*, 874 F.Supp. 1546 (W.D.Tex.1995); *Hopkins v. Baltimore Gas & Elec. Co.*, 871 F.Supp. 822 (D.Md. 1994); *Polly v. Houston Lighting & Power Co.*, 803 F.Supp. 1, 6 (S.D.Tex.1992). The *Goluszek* court found that Title VII is concerned with a "dominant" gender's atmosphere of oppression. *Goluszek*, 697 F.Supp. at 1456. The court granted summary judgment against Goluszek on his sexual harassment claim because he was a male in a male-dominated environment and thus, could not show that he worked in an environment that treated males as inferior. *Id.* Another district court has adopted this same reasoning and granted summary judgment against a male plaintiff who could not show that he worked in an "anti-male" atmosphere. *Vandeventer v. Wabash Nat. Corp.*, 867 F.Supp. 790, 796 (N.D.Ind.1994).[2] Although stating that same-sex harassment is never actionable under Title VII, the *Goluszek* and *Vandeventer* courts also believed that whether a male plaintiff could show that his work environment was "anti-male" or not male-dominated was relevant.

■ After considering the statute and the applicable case law, the Court holds that same-sex sexual harassment is prohibited by Title VII for several reasons. First, a recent statement by Chief Judge Posner, although

dicta, indicates how the Seventh Circuit might rule on this issue:

> Sexual harassment of women by men is the most common kind, but we do not mean to exclude the possibility that sexual harassment of men by women, or men by other men, or women by other women would not also be actionable in appropriate cases.

*Baskerville v. Culligan Intern. Co.*, 50 F.3d 428, 430 (7th Cir.1995).

■ Moreover, when ascertaining the intent of Congress, courts must begin with the statutory language. *Norfolk and Western Ry. Co. v. American Train Dispatchers Ass'n*, 499 U.S. 117, 127–29, 111 S.Ct. 1156, 1163, 113 L.Ed.2d 95 (1991). Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). It is well recognized that Title VII protects both males and females from sexual harassment in the workplace. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986) (Title VII "evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women.' "); *Ulane*, 742 F.2d at 1084 ("[t]he phrase in Title VII prohibiting discrimination based on sex, in its plain meaning, implies that it is unlawful to discriminate against women because they are women and against men because they are men."); *Henson v. City of Dundee*, 682 F.2d 897, 903 (11th Cir.1982); *Showalter v. Allison Reed Group, Inc.*, 767 F.Supp. 1205, 1211 (D.R.I.1991); *Joyner v. AAA Cooper Transp.*, 597 F.Supp. 537, 542 (M.D.Ala.1983), *aff'd*, 749 F.2d 732 (11th Cir.1984). The plain language of Title VII simply does not restrict its prohibition

---

1. In *Garcia*, the Fifth Circuit held without any analysis that "[h]arassment by a male supervisor against a male subordinate does not state a claim under Title VII even though the harassment has sexual overtones. Title VII addresses gender discrimination." 28 F.3d at 451–52 (*quoting Giddens v. Shell Oil Co.*, No. 92–8533, 12 F.3d 208 (5th Cir. Dec. 6, 1993) (unpublished)).

2. The *Vandeventer* court cited to *Ulane v. Eastern Airlines, Inc.*, 742 F.2d 1081 (7th Cir.1984), for the proposition that "same-sex harassment is not actionable under Title VII." *Ulane*, however, held only that Title VII does not protect transsexuals from employment discrimination and did not address the current issue of the viability of a same-sex sexual harassment suit under Title VII.

against discrimination to employees of the opposite sex.[3]

▮ Furthermore, while the number of male and female workers in a work environment may be relevant in assessing the impact of sexual harassment, such a showing is not essential to prevail on a sexual harassment claim.[4] Griffith has alleged both hostile work environment and *quid pro quo* sexual harassment. To succeed on a Title VII claim against an employer based on hostile work environment sexual harassment, an employee must show that (1) he was a member of a protected class; (2) he was subjected to unwelcome sexual harassment in the form of sexual advances, request for sexual favors or other verbal or physical conduct of a sexual nature; (3) the harassment complained of was based upon sex; (4) the defendant's conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment; and (5) the employer knew or should have known of the harassment and failed to take appropriate corrective action. *Harris v. Forklift Systems, Inc.,* —— U.S. ——, ——, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993); *Rennie v. Dalton,* 3 F.3d 1100, 1107 (7th Cir.1993); *Guess v. Bethlehem Steel Corp.,* 913 F.2d 463, 465 (7th Cir.1990). In a *quid pro quo* sexual harassment case, a plaintiff must prove that an economic benefit was linked to participation in conduct of a sexual nature. *Dey v. Colt Const. & Development Co.,* 28 F.3d 1446, 1453 (7th Cir.1994). "The gender of the person who requests such favors is not relevant." *Prescott,* 878 F.Supp. at 1550. "The gravamen of any sexual harassment claim is that the alleged sexual advances were 'unwelcome.'" *Meritor,* 477 U.S. at 68, 106 S.Ct. at 2406 (*quoting* 29 C.F.R. § 1604.11(a) (1985)). "To be sure, sexual advances can be 'unwelcome' regardless of the harasser's gender." *McCoy v. Johnson Controls World Services, Inc.,* 878 F.Supp. 229 (D.Ga.1995).

▮ Griffith must ultimately establish that he was sexually harassed "because of his sex." *Henson,* 682 F.2d at 903–04. In other words, that but for the fact of his sex, Griffith would not have been the object of harassment. *Id.* at 903. Griffith can establish that the harassment was "based upon sex" by showing that his harasser only harassed men, and thus, did not treat women in a similar fashion. *McCoy,* 878 F.Supp. 229.

Griffith's Amended Complaint alleges that he was continually subjected to sexually suggestive and derogatory comments and improper physical sexual contacts by Defendant Cutting. Amended Complaint, Counts I–VII, ¶ 8. The Amended Complaint further alleges that these acts of sexual harassment included unwelcome sexual advances, requests for sexual favors, and verbal or physical conduct of a sexual nature by Defendant Cutting which substantially interfered with Griffith's working environment and submission to which was demanded of Griffith in exchange for favorable working conditions or terms. Amended Complaint, Counts I–VII, ¶ 9. Paragraph 10 of Griffith's Amended Complaint alleges that "employees of the opposite sex were not subjected to acts of harassment described in paragraphs 8 and 9 and Plaintiff was subjected to such harassment substantially on the basis of his sex." As Griffith has alleged that he was subjected to unwelcome sexual harassment because of his sex that was not directed to female employees, he states a claim under Title VII. *Wright v. Methodist Youth Services, Inc.,* 511 F.Supp. 307, 310 (N.D.Ill.1981) (defendant's motion to dismiss complaint of same-sex sexual harassment denied where plaintiff alleged that demand made on him would not be directed to a female employee).

### *Keystone's Motion to Dismiss (# 68)*

Keystone's Motion to Dismiss brought under Fed.R.Civ.P. 12 and/or 56 argues that

---

**3.** The Court also notes that little legislative history exists on Title VII's prohibition against sex discrimination as it was added to the statute at the last minute on the floor of the House of Representatives, without prior hearing or debate. *Meritor,* 106 S.Ct. at 2404; *Ulane,* 742 F.2d at 1084.

**4.** "If it were, a similar argument could be made when a white plaintiff attempts to sue for reverse

discrimination under Title VII. That white plaintiff would have been at all times a member of the majority, a member of the 'dominant' race. However, the Supreme Court 'has consistently interpreted Title VII to proscribe racial discrimination in private employment against whites on the same terms as racial discrimination against nonwhites ...'" *Prescott v. Independent Life and Accident Insurance Co.,* 878 F.Supp. 1545, 1550 (M.D.Ala.1995).

Counts I, VIII, and XV of Griffith's Amended Complaint should be stricken and dismissed as surplusage because they name Keystone Steel & Wire Co., an unincorporated division of Keystone Consolidated Industries, as a Defendant and they are duplicative of charges made against Keystone Consolidated Industries. Griffith admits that the counts alleged against the two differently-named Keystone Defendants essentially duplicate each other but refuses to dismiss any counts in his Amended Complaint. Griffith explains that he named Defendant Keystone in two different ways because of language in a collective bargaining agreement alleged to be in effect at the time of the events complained of and corporate information Keystone filed with the Illinois Secretary of State's office. Griffith states that he will dismiss the duplicative counts if Defendant Keystone will represent that it will incur the same liability under either set of counts directed against the Keystone Defendants. Griffith complains that Keystone has not admitted that Keystone Consolidated Industries, Inc., a Delaware corporation, d/b/a Keystone Steel & Wire Company, is the most accurate description of the Defendant Keystone corporate structure involved in this case.

■ An unincorporated division of Keystone Steel & Wire Company is not suable in its own right because a division has no separate assets; all of its assets are owned by the corporation of which it is a part. *Albers v. Church of the Nazarene,* 698 F.2d 852, 857 (7th Cir.1983); *Spearing v. National Iron Co.,* 770 F.2d 87, 89 (7th Cir.1985); *Salzstein v. Bekins Van Lines, Inc.,* 747 F.Supp. 1281, 1282 n. 1 (N.D.Ill.1990).

> Unless the organization is liable there can be no levy of execution against the division's assets, and if the organization is not liable none of its assets can be used to satisfy the judgment.

*Albers,* 698 F.2d at 857. Accordingly, Keystone's Motion to Dismiss Counts I, VIII, and XV of Griffith's Amended Complaint is granted.

To avoid waiving certain arguments, Keystone's Motion to Dismiss also renews its earlier motion to dismiss for lack of subject matter jurisdiction on the basis that Plain-

tiff's sexual harassment remedy is grievance arbitration. Keystone further renews its motion to dismiss any claims of quid pro quo sexual harassment on the basis that Griffith failed to satisfy the condition precedent of filing a discrimination charge with the EEOC raising these allegations. The Court reaffirms its July 22, 1994 order rejecting these arguments.

### *Keystone's Motion for Summary Judgment (# 69)*

■ Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A defendant's motion for summary judgment must demonstrate, based on the record, an absence of evidence to support the plaintiff's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); Fed.R.Civ.P. 56(e). The record and all reasonable inferences drawn from it are viewed in the non-movant's favor. *Griffin v. Thomas,* 929 F.2d 1210, 1212 (7th Cir.1991).

■ Keystone's argues that the Illinois Workers' Compensation Act ("Act") bars Griffith's claims for assault and battery, intentional infliction of emotional distress, and negligent supervision (if Griffith is actually making such a claim). The Illinois Workers' Compensation Act provides financial protection to workers for accidental injuries arising out of and in the course of employment. *Meerbrey v. Marshall Field and Co., Inc.,* 139 Ill.2d 455, 151 Ill.Dec. 560, 563, 564 N.E.2d 1222, 1225 (1990). The Act imposes liability without fault on the employer, and in return, bars common law suits by employees against their employer. *Id.* Specifically, the Act prohibits an employee from bringing a

common law cause of action against his employer unless the employee proves: (1) that the injury was not accidental; (2) that the injury did not arise from his employment; (3) that the injury was not received during course of employment; or (4) that the injury was not compensable under the Act. *Id.*, 151 Ill.Dec. at 564, 564 N.E.2d at 1226.

 Keystone argues that none of the four exceptions to the Act's exclusivity provision apply to Griffith's injury. An injury is "accidental" if it is unexpected and unforeseeable. *Id.* Injuries inflicted intentionally by a co-employee are accidental from both the employee and the employer's point of view. Thus, the employer has a right to consider the injured employee's sole remedy against the employer will be under the workers' compensation statute. *Id.*

██ However, the exclusivity provisions of the Workers' Compensation Act do not bar a common law cause of action against the employer for injuries "which the employer or his alter ego intentionally inflicts upon an employee or which were commanded or expressly authorized by the employer." *Id.* Griffith argues that a genuine issue of material fact exists regarding the extent of authority possessed by the foreman Defendants. The Court disagrees and finds that, as a matter of law, the individual Defendants Griffith claims were responsible for the alleged conduct of which he complains are not the alter egos of Keystone.

In *Jablonski v. Multack*, 63 Ill.App.3d 908, 20 Ill.Dec. 715, 719, 380 N.E.2d 924, 928 (1978), the court held that a manager of a restaurant, alleged to be only one of a number owned by the corporate employer, was not acting as the alter ego of the employer when the manager allegedly committed an assault and battery against the plaintiff, and thus, plaintiff's assault and battery charges were preempted by the Workers' Compensation Act. *Id.*, 20 Ill.Dec. at 718–19, 380 N.E.2d at 927–28. The *Jablonski* court distinguished the facts of its case from the facts in *Heskett v. Fisher Laundry & Cleaners Co.*, 217 Ark. 350, 230 S.W.2d 28 (1950). The *Jablonski* court quoted with approval the following passage from 2A Larson, The Law of Workmen's Compensation, § 68.22 (1976):

The correct distinction to be drawn in this class of cases is between a supervisory employee and a person who can genuinely be characterized as the alter ego of the corporation. Take, for example, a case like *Heskett v. Fisher Laundry & Cleaners Company, Incorporated,* which is sometimes lumped together with assault cases involving foremen. It seems probable from the facts given in the opinion that the assailant there was so dominant in the corporation that he could be deemed the alter ego of the corporation under the ordinary standards governing disregard of corporate entity. He was an officer and general manager of the corporation. His name was Fisher, and the corporation's name was Fisher Laundry and Dry Cleaners Company—indicating that it was probably in whole or in part his own business. In such circumstances that attribution of moral responsibility for the actor's conduct to the corporation is quite a different matter from the same process when the actor is merely a foreman or supervisor.

*Id.; See also Sutton v. Overcash,* 251 Ill. App.3d 737, 191 Ill.Dec. 230, 242, 623 N.E.2d 820, 832 (1993) (holding that an employee who committed the battery acted as an alter ego of the corporation when the employee was a 50% shareholder of the corporation, was the corporation's vice president and secretary, and the corporation consisted of only the tortfeasor and another physician); *Richardson v. County of Cook,* 250 Ill.App.3d 544, 190 Ill.Dec. 245, 249, 621 N.E.2d 114, 118 (1993) (holding that defendant hospital entitled to summary judgment where no facts had been presented suggesting that alleged tortfeasors, plaintiff's supervisor and two hospital security guards, were acting under the direction of their employer and mere allegation that the defendants were acting within the scope of their authority was "not equivalent to an allegation that [the employer] authorized [them] to commit the specific acts in question."); *Hangebrauck v. Zenith Electronics Corp.,* 1988 WL 28686, *5 (N.D.Ill. March 23, 1988) (alleged harasser was plaintiff's supervisor and court held that since Zenith is a large corporation, as opposed to an individual employer, and the

alleged tortfeasor was a middle-level supervisor, the tortfeasor was not Zenith's alter ego).

With these precedents in mind and after consideration of the applicable facts, the Court concludes that the individual Defendants were not acting as the alter egos of Keystone when they allegedly committed assault and battery and intentional infliction of emotional distress. In 1993, Keystone had an average of 1,900 employees. Affidavit of C. Vic Stirnaman, Director, Labor Relations for Keystone Steel & Wire, ¶ 4. Approximately 1,600 of these employees worked at Keystone's facility in Bartonville, Illinois where the conduct at issue in this case occurred. *Id.*

The individual Defendants in this case, Charlie Cutting, Lee Langley, Harold Scoby, Rick Jay, and Eric Eberly hold or held at all relevant times positions as foremen. Jay and Eberly both hold the title of Foreman, Steel Works Electrical Maintenance, and report to General Foreman, Steel Works Electrical Maintenance; he reports to the Superintendent, Steel Works Maintenance, who, in turn, reports to the General Manager, Product & Process Improvement. The General Manager, Product & Process Improvement, reports to the President. Langley is Foreman, Steel Works Assigned Mechanical, and reports to the General Foreman, Steel Works Assigned Mechanical; he, in turn, reports to Superintendent, Steel Works Maintenance, and that individual, in turn, reports to the General Manager, Product & Process Improvement. Scoby is a Foreman, Electric Shop, and reports to the General Foreman, Steel Works Electrical Maintenance; this General Foreman, in turn, reports to the General Manager, Products and Process Improvement. During his employment with Keystone Steel & Wire, Cutting was Foreman—Mechanical Foreman, Rigger Welders, Crane Repair and Pipe Shop, and reported to General Foreman, Steel Works Mechanical, who reported to General Foreman Steel Works Mechanical, Superintendent, Steel Works Maintenance, and General Superintendent Steel Works. *Id.* ¶ 16; *See also* Stirnaman's Affidavit ¶¶ 6–15 for a description of the "chain of command" in the manufacturing operations of Keystone Steel & Wire and Keystone's Industrial Relations Department.

Keystone is a large corporation with many levels of management. The individual Defendants are supervisory employees but have numerous layers of managers over them. The responsibility and authority of foremen such as the individual Defendants is very limited and only includes day-to-day direction of their work crew and supervising and evaluating these employees. *Id.* ¶ 17. Such foremen do have authority to issue minor disciplinary notices and requisition necessary tools and materials. Griffith points out that such Defendants possessed the authority in 1992 and 1993 to discipline Griffith for any work rule violation, place disciplinary papers in Griffith's personnel file, and recommend Griffith's termination to the general foreman. However, foremen such as the individual Defendants have no authority to hire or fire, increase or decrease compensation or benefits, set corporate policy or establish corporate procedures, dictate or influence labor relations or personnel policies or practices, and have no direct input or influence into the direction or control of the company. *Id.* Unlike *Heskett* and *Sutton,* where employees were found to have acted as alter egos of their employer, the individual Defendants in this case are not officers or managers of Keystone and do not own a substantial part of the business. The individual Defendants were not "so dominant" in Keystone that they could be deemed the alter egos of the corporation.

Griffith's Amended Complaint also alleges that Keystone knew or should have known that the individual Defendants were actually committing or ratifying the acts of sexual harassment. Amended Complaint, Count IX, ¶ 18. Griffith alleges that despite Keystone's knowledge, it failed to discipline the individual Defendants and thereby ratified or actively approved of their unlawful acts. Amended Complaint, Count IX, ¶ 19. Griffith argues that Stirnaman's affidavit does not deny that Keystone possessed knowledge of the alleged acts committed by the individual Defendants. This is correct but does not help Griffith.

Keystone cannot be said to have committed or commanded the alleged torts "simply because it should have known" that Griffith's co-workers were harassing him. *Crissman v. Healthco Intern., Inc.*, 1992 WL 223820, *8 (N.D.Ill. Sept. 2, 1992). Further, an allegation that an employer failed to discipline or terminate an employee for his alleged unlawful conduct against a co-employee is not sufficient to show that the employer is "directly responsible" for the co-employee's injury. *Bilandzic v. Dimensions Medical Center, Ltd.*, 1995 WL 89008, *3 (N.D.Ill. Feb. 24, 1995). In *Cline v. General Elec. Capital Auto Lease, Inc.*, 757 F.Supp. 923, 931 (N.D.Ill.1991), the court held that the Illinois Workers' Compensation Act does not bar a common law action if it can be determined that the employer was reasonably aware of the co-employee's conduct, yet failed to stop that conduct. The *Cline* court found that the employer "authorized" a battery upon the plaintiff by "failing to prevent assaults it was reasonably aware [the supervisor] was committing." *Id.* However, in *Cline*, internal corporate memos existed which showed that the employer was aware of its supervisor's mistreatment of other employees but tolerated it because the supervisor's department performed so well. In contrast, Griffith has only alleged in his Amended Complaint that Keystone knew that the individual Defendants were harassing him. To succeed in opposing a motion for summary judgment, plaintiff may not merely rest on his pleadings, but must demonstrate, through specific evidence, that there remains a genuine issue of triable fact. *Lister v. Stark*, 942 F.2d 1183, 1187 (7th Cir.1991). Griffith has not presented any affirmative evidence demonstrating that Keystone was aware of its foremen's alleged treatment of Griffith before he filed a grievance concerning the alleged sexual harassment on February 2, 1993, and the Amended Complaint only alleges that the unlawful conduct occurred between mid-October 1992 and early January 1993.

Moreover, "tacit authorization" by an employer of an employee's conduct is insufficient to show that the employer commanded or expressly authorized the employee's conduct. *Rhodes v. Deere*, 1991 WL 352612, *8 (N.D.Ill. Oct. 18, 1991); *See also Copass v. Illinois Power Co.*, 211 Ill.App.3d 205, 155 Ill.Dec. 600, 606, 569 N.E.2d 1211, 1217 (1991) (holding that allegations that defendant employer "directed and encouraged" the violations of the Public Utilities Act did not sufficiently allege employer complicity in the co-employee's intentional tort). Griffith's Amended Complaint does not even allege that the individual Defendants were acting under the direction of Keystone. Absent specific instances of corporate direction, encouragement, or involvement in committing the intentional torts allegedly perpetrated by the individual Defendants, Griffith's intentional tort claims against Keystone are preempted by the Illinois Workers' Compensation Act. *Ratay v. Montgomery Ward & Co.*, 1992 WL 281357, *4 (N.D.Ill. Oct. 8, 1992). Keystone is entitled to judgment as a matter of law on those counts of the Amended Complaint.

Finally, Keystone argues that any attempt by Griffith to hold it liable for assault and battery or intentional infliction of emotional distress under a theory of negligent supervision or retention is also preempted by the Illinois Workers' Compensation Act. As Griffith's response to Keystone's Motion for Summary Judgment does not address this argument regarding negligent supervision or retention, the Court can only assume that Griffith is not alleging a negligent supervision or retention claim.

### Conclusion

For the reasons stated above, Keystone's Motion to Dismiss (# 68) and Motion for Summary Judgment (# 69) are GRANTED. Keystone's Motion to Dismiss (# 89), Cutting's Motion to Dismiss Count III (# 91), and Langley, Scoby, Jay, and Eberly's Supplemental Motion to Dismiss Counts VI–VII, XI–XIV & XVIII–XXI of the Amended Complaint (# 86) are DENIED. Counts I, VIII, and XV are dismissed with prejudice as they name an unincorporated division of Keystone as a Defendant. Counts IX and XVI, alleging assault and battery and intentional infliction of emotional distress, are dismissed with

prejudice as they are barred by the Illinois Workers' Compensation Act.